**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | | |
| | * | |
| v. | | Criminal Action No.: RDB-17-0355 |
| | * | |
| PHILLIP WAYNE BLOOMER, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

On June 28, 2017, a federal grand jury returned an indictment against Phillip Wayne

Bloomer, Jr. ("Bloomer"), Von Lamarr Walker ("Walker"), and Efrem Rahsaan Jones

("Jones"), charging all three Defendants with conspiracy to distribute and possess with the

intent to distribute heroin, in violation of 21 U.S.C. § 846, and charging Defendant Walker

with possession with the intent to distribute one-hundred (100) grams or more of heroin, in

violation of 21 U.S.C. § 841(a)(1). (ECF No. 28.) Currently pending before this Court are

Defendant Walker and Defendant Bloomer's Motions to Suppress evidence obtained

directly and indirectly through electronic surveillance. (ECF Nos. 62, 73.) The parties'

submissions have been reviewed, and this Court held a hearing on the motions on

December 18, 2017. (ECF No. 95.) For the following reasons, Defendant Walker and

Defendant Bloomer's Motions to Suppress (ECF Nos. 62, 73) are DENIED.

## BACKGROUND

On April 14, 2017, the Honorable J. Frederick Motz of this Court approved an

application submitted by the Government for a wiretap of Defendant Walker's cellphone.

(ECF No. 66-3.) The application for the wiretap was supported by a sixty-three page affidavit executed by a Task Force Officer with the Drug Enforcement Administration. (ECF Nos. 66-1, 66-2.) The application stated that there was probable cause to believe both that the "Target Suspects," including Defendants Walker and Jones, were committing and would continue to commit various controlled-substance offenses, and that particular communications concerning those offenses would be obtained through the interception of wire and electronic communications. (ECF No. 66-1.) Around one month later, on May 10, 2017, the Government submitted an additional wiretap application seeking to authorize a wiretap of a replacement phone Walker acquired and also a wiretap of Bloomer's cellphone. (ECF No. 66-4.) On that same day, Judge Motz authorized the interception of these cellphones. (ECF No. 66-6.) Around June 2, 2017, Defendant Bloomer also acquired a new, replacement phone, and therefore another application was made for a wiretap of Defendant Bloomer's new cellphone, which Judge Motz ordered. (ECF Nos. 66-10, 66-12.) In addition, on June 8, 2017, Judge Motz authorized an extension of the wiretap on Walker's second phone. (ECF No. 66-9.) On June 28, 2017, a federal grand jury returned an indictment against Defendants Bloomer and Walker, and another alleged co-conspirator, Defendant Jones. (ECF No. 28.)

On August 18, 2017, Defendant Walker filed a Motion to Suppress evidence obtained directly and indirectly through the wiretap surveillance. (ECF No. 62.) The Government filed a Response on September 18, 2017. (ECF No. 66.) Defendant Bloomer subsequently filed a similar Motion to Suppress. (ECF No. 73.) Both Defendants challenge the wiretaps on the grounds that they did not meet certain procedural requirements set forth in 18 U.S.C.

§ 2518.[1] On December 18, 2017, this Court held a hearing on the Motions. (ECF No. 95.) This Court addresses Defendants' arguments in turn below.[2]

## ANALYSIS

### I.      Probable Cause

Before authorizing the interception of a wire communication, a judge must determine that there is probable cause to believe that: an individual is committing, has committed, or is about to commit a particular offense, a particular communication concerning that offense will be obtained through the interception, and facilities from which the wire communication are to be intercepted are being used, or are about to be used, in connection with the offense. 18 U.S.C. § 2518(3). The standard of probable cause for issuing a wiretap order is akin to the probable cause standard that governs an ordinary search warrant. *United States v. Miller*, 50 F.Supp.3d 717, 724 (D. Md. 2014) (citations omitted). Therefore, an applicant need only establish a "fair probability" that under the totality of the circumstances, communications concerning the offense will be obtained through the wiretap. *Id.* (citing *United States v. DePhew*, 932 F.3d 324, 327 (4th Cir. 1991)). Importantly, "[a] reviewing court is not to substitute its judgment as to probable cause, but need only determine whether there was a substantial basis for the issuing court's determination of probable cause." *United States v. Fauntleroy*, 800 F. Supp. 2d 676, 681 (D. Md. 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 239-39, 103 S. Ct. 2317 (1983)). Accordingly, "great deference" is normally given to the issuing judge's determination, given that he or she is "in the best position to determine if probable

---

[1] The federal wiretap statute ("Title III") is codified at 18 U.S.C. § 2510 *et seq.* 18 U.S.C. § 2518 contains the procedural and substantive provisions governing wiretap applications.
[2] During the hearing, Defendant Walker abandoned his argument that the orders authorizing the wiretaps were facially insufficient pursuant to the requirements set out in 18 U.S.C. § 2518.

cause has been established in light of the circumstances as they appear at the time." *DePhew*, 932 F.3d at 327; *Miller*, 50 F.Supp.3d at 725.

The sixty-three page affidavit supporting the first order authorizing the interception of Defendant Walker's phone on April 14, 2017 outlined that: (1) law enforcement had previously seized narcotics from Walker during a traffic stop; (2) a confidential source conducted two controlled purchases of heroin from Walker in March and April of 2017; and (3) law enforcement had received information from confidential sources corroborating that Walker was dealing drugs. During the motions hearing, defense counsel argued that the confidential source who made the controlled purchases from Walker was deactivated after investigators learned that he/she was engaging in unauthorized illegal drug transactions. (ECF No. 66-11 at ¶ 40.) However, the investigators learned the facts justifying the deactivation on May 11, 2017, over three weeks after the Government applied for the wiretap of Defendant Walker's first phone.[3] Accordingly, this information was not available either to the affiant or Judge Motz at the time Judge Motz determined that there was probable cause for the wiretaps. Second, the reason the confidential source was deactivated, for engaging in unauthorized drug transactions, was not the type of behavior that altered the affiant's opinion that he/she provided reliable information about Defendant Walker and Bloomer's drug activities. (*Id.* at ¶ 41). Third, there were independent observations of this informant's meetings with Defendant Walker, and the affiant also relied on two other sources of information. (ECF No. 66-2 at ¶¶ 22-48.)

---

[3] Further, May 11, 2017 was also one day after the wiretap application for Defendant Walker's second phone, and Defendant Bloomer's first phone.

Once law enforcement obtained the order authorizing the first wiretap, agents began monitoring Defendant Walker's phone. During the monitoring, law enforcement intercepted calls between Defendants Walker and Bloomer. Agents monitoring the conversations interpreted the two Defendants' "coded language" as discussing drug transactions.[4] In addition, law enforcement conducted a controlled purchase from Bloomer and received confirmation from confidential sources that Bloomer was dealing drugs. Further, by previously issued cellphone warrants, law enforcement tracked Bloomer regularly travel from Hagerstown to New York for a brief time, then to an apartment in Pennsylvania, and then back to Hagerstown. For many of the trips, Defendant Bloomer stopped at a storage unit in Hagerstown, and law enforcement also observed an individual who looked like Bloomer at an apartment complex in Greencastle, Pennsylvania, which the agent believed to be Bloomer's stash house. The Government subsequently applied for the wiretap of Defendant Bloomer's phone on May 10, 2017.[5]

The two remaining applications and subsequent wiretap orders were for phones Defendant Walker and Bloomer acquired as replacements for their previous ones. The affiant, relying on his experience, knew that acquiring replacement phones and switching numbers are common tactics used to thwart wiretaps and other surveillance. (ECF No. 66 at 15; ECF No. 66-5 at ¶¶ 6, 149; ECF No. 66-1 at ¶¶ 6, 125.) For the above stated reasons, the affidavits in support of each wiretap order stated ample grounds to support Judge Motz's findings that there was probable cause that Defendants Bloomer and Walker were involved

[4] For example, the Defendants used words like "duce" and "onion." The agents monitoring the conversations believed from their training and experience that "duce" referred to the number twenty and "onion" referred to an ounce of drugs. (ECF No. 66-8 at ¶ 87.)
[5] This Court further notes that during the motions hearing, counsel for Defendant Walker detailed all of the probable cause supporting this wiretap in the context of the exhaustion requirement, explained below.

in the charged drug offenses and intercepting their phones would lead to the interception of communications concerning those offenses.

## II. Exhaustion

Defendants Bloomer and Walker next argue that the Government did not exhaust traditional investigative methods before applying for the wiretaps. Before approving a wiretap, a judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518 (3)(c). Although enacted to prevent wiretap procedures from being routinely employed as initial steps in investigations, "the government is not required to demonstrate that other investigatory methods have been 'wholly unsuccessful' or that it has exhausted '*all* possible alternatives to wiretapping.'" *Miller*, 50 F.Supp.3d 717, 727 (D. Md. 2014) (quoting *United States v. Smith,* 31 F.3d 1294, 1297 (4th Cir.1994), *cert. denied,* 513 U.S. 1181, 115 S.Ct. 1170 (1995) (emphasis in original)); *see also id.* (explaining that a wiretap does not need to be a last resort). Accordingly, the Government's burden to show the inadequacy of normal investigative techniques "is not great." *United States v. Oriakhi*, 57 F.3d 1290, 1298 (4th Cir. 1995). "Rather, the government must present specific factual information 'sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence to the point where wiretapping becomes reasonable.'" *United States v. Cunningham*, 467 Fed. App'x. 219, 220 (4th Cir. 2012) (quoting *Smith*, 31 F.3d at 1298). In making this determination, courts may consider the affiant's knowledge, training, and experience regarding whether a particular investigative technique would have succeeded or failed. *Miller*, 50 F.Supp.3d at 727 (citing *Smith*, 31 F.3d at 1299). Finally, similar to the

probable cause requirement, "[d]eference is given to the issuing judge's determination that the wiretap applications provided sufficient information to satisfy the exhaustion requirement of 18 U.S.C. § 2518(3)(c)." *Id.* at 728.

Defendants present two related arguments as to how the Government failed to meet the exhaustion requirement, asserting that the traditional techniques employed by the Government were "producing unusually good results" and that the affidavits stated "lofty and overly-broad goals of the investigation to justify why only a wiretap c[ould] accomplish the [investigation's objectives." (ECF No. 73 at 6-7.) The Government responds that this was a complex case with the goal of identifying suppliers "up the chain," and that the affidavits explained why more than a dozen traditional investigative techniques were not, or would not have been, sufficient to identify the full scope of the Defendants' organization and operations.

The goals of the investigation included ascertaining "the nature, scope, extent and methods of operation of the narcotics trafficking activities," "the identities, roles, and telephone numbers of co-conspirators, accomplices, aiders and abettors," and "the sources, distribution, transfer and location of the narcotics and money involved in those activities." (ECF Nos. 66-1, 66-4, 66-7, and 66-8 at ¶¶ 5B(i-x).) Beginning with Defendants' second argument, the United States Court of Appeals for the Fourth Circuit has recognized "investigators' objectives in attempting to ascertain the *full scope* of the conspiracy." *United States v. Faraz*, Case Nos. 14-4551, 14-4558, 626 Fed. App'x. 395 (4th Cir. 2015) (emphasis added). With respect to Defendants' first argument, the affidavits explain at length why traditional investigative techniques were not meeting these goals.  As the affiant explained in

the first application for Defendant Walker's phone, "the confidential sources employed here have provided some historical and contemporaneous information about certain members of the organization but simply do not know about all aspects of the organization, its methods, or its suppliers." (ECF No. 66-2 at ¶ 103.) Controlled purchases had similar limits given that they could only confirm certain individual's involvement in the operations, but not the broader organization and its means or methods.[6]

During the hearing, counsel for Defendant Bloomer focused on the amount of information the Government had already gathered through traditional techniques about the Defendants' operations in Washington County, Maryland. However, as the Government explained, agents were unable to gather information concerning any operations extending outside of that area. Specifically, the Government was seeking to corroborate an anonymous tip that Bloomer, whose cellphone and vehicle tracking indicated made regular trips to New York City, was purchasing drugs from a New York supplier on those trips. (ECF No. 66-5 at ¶ 71.) However, "investigators ha[d] been unable to make any controlled purchases from individuals outside of Maryland who are higher in the distribution chain, and thus c[ould] not engage in controlled purchases with the New York Suppliers." (*Id.* at ¶ 166.) In this case, the Government was trying to identify suppliers "up the chain" and learn about the organization's methods and suppliers in order to successfully prosecute all of the members of the drug trafficking operation. This Court has recognized the steps "higher-ups in drug organizations often take . . . to obscure their tracks" and that wiretaps are "becoming a

---

[6] The Government also used physical surveillance, search warrants for cellphones seized during a traffic stop of Walker, witness interviews, covert cameras at various locations, court-ordered pen registers and trap and trace devices, and other wiretaps. The affidavits explained why other methods, including undercover agents, trash searches, and mail cover requests, were either not feasible or would not have furthered the goals of the investigation.

routine and necessary tool in modern law enforcement operations investigating complex and opaque organizations." *United States v. Fauntleroy*, 800 F.Supp.2d 676, 683 (D. Md. 2011).

Accordingly, the Government presented information sufficient to establish that it encountered difficulties ascertaining the full scope of the criminal enterprise and wiretaps were reasonable. *Cunningham*, 467 Fed. App'x. at 220; *see also Faraz*, 626 Fed. App'x. at 397 (finding no error in the district court's determination that there was necessity when the affidavits explained (1) how investigators were struggling to infiltrate the drug conspiracy, (2) that use of other investigative techniques on their own had limited value in exposing the full scope of the conspiracy, and (3) that wiretaps combined with other investigative techniques would likely be effective because suspected members of the conspiracy used the target telephones in furtherance of illicit activities); *United States v. Buensalida*, Case No. 12-4788, 537 Fed. App'x. 226 (4th Cir. 2013) (explaining that the Government established necessity through the wiretap application, which included a 74 page affidavit, thoroughly explaining (1) how investigators were having difficulty infiltrating the conspiracy, (2) that normal investigative techniques would be problematic because video surveillance could be easily detected and executing search warrants would be premature, (3) and that wiretaps would likely be effective because members of the conspiracy used the target telephones in furtherance of illicit narcotics activities). Therefore, the exhaustion requirement was met.

## III.   Minimization

The minimization requirement set forth in 18 U.S.C. § 2518(5) states in relevant part:

> Every order and extension thereof . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon the attainment of the authorized objective . . ..

"The minimization requirement is satisfied if the reviewing court finds that, in light of all of the facts and circumstances, 'the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion.'" *Fauntleroy*, 800 F.Supp.2d at 683 (quoting *United States v. Tortorello*, 480 F.2d 764, 784 (2d Cir. 1973), *cert. denied*, 441 U.S. 866 (1973)). This Court has explained that that "the Court must exercise great care before submitting its own *ex post* judgment for that of the monitoring agents. '[M]onitoring agents are not gifted with prescience and cannot be expected to know in advance what direction a conversation will take.'" *Fauntleroy*, 800 F.Supp.2d at 685 (quoting *United States v. LaGorga*, 336 F.Supp. 190, 196 (W.D. Pa. 1971)). Further, the degree of judicial supervision is relevant, and "[l]atitude is[ ] warranted when conspirators use 'codes and specialized jargon, making criminal conversations more difficult to detect and decipher ....'" *Id.* (quoting *United States v. Uribe*, 890 F.2d 554, 557 (1st Cir. 1989)).

During the hearing, Defendants Walker and Bloomer relied on the fact that only 1-4% of the calls in this case were minimized. However, the Minimization Guidelines provided to the relevant agents provided that conversations could be monitored for up to two minutes in order to identify the parties to the conversation and determine whether it was criminal in nature or constituted evidence of the relevant offenses. This Court recognizes that two minutes is a reasonable amount of time. *See Fauntleroy*, 800 F.Supp.2d at 684 ("Taking into consideration the complexity of the alleged conspiracy, the number of individuals involved, and the coded language that has become a fixture of communication in the world of illegal drugs, two minutes is a reasonable time in which to make an initial determination as to pertinence." (citing *United States v. Quintana*, 508 F.2d 867, 874 (7th Cir. 1975)). For the calls

that lasted longer than two minutes, the Defendants used coded language and other jargon, and therefore deserved latitude. Further, the interceptions were overseen by Judge Motz who was given 15-day reports. *See Miller*, 50 F.Supp.3d at 726 (explaining that "the degree of judicial supervision of the surveillance is relevant" (citations omitted)). Accordingly, the Government met the minimization requirements of the Wiretap statute.

## IV. Termination

Finally, the statute requires that an intercept "must terminate upon the attainment of the authorized objective, or in any event in thirty days." 18 U.S.C. § 2518(5). The Defendants argue that the interceptions were not terminated upon attainment of the wiretaps' objectives. However, as described above, the Government's objectives during the investigation were to ascertain the full scope of the conspiracy, a recognized objective by the Fourth Circuit. It is evident from the record that these goals were not met during the first wiretaps of each Defendant's phones given that the Government subsequently applied for wiretaps of the Defendant's replacement phones, and a subsequent continuation of Defendant Walker's phone. The monitoring of Bloomer's replacement phone began on June 2, 2017, and the monitoring pursuant to the order approving the continuation of Walker's phone began on June 8, 2017. Less than three weeks later, on June 21, 2017, the Honorable Beth P. Gesner of this Court signed search and seizure warrants for four subject premises and seven vehicles operated by Defendants Bloomer and Walker, which were executed on June 22, 2017. That day, the Honorable Stephanie Gallagher of this Court signed criminal complaints for all three Defendants. Subsequently, the monitoring of Bloomer and Walker's phones was terminated on June 23, 2017. For these reasons, the termination requirement

was met, and Defendant Walker and Defendant Bloomer's Motions to Suppress (ECF Nos. 62, 73) are DENIED.

## CONCLUSION

For the reasons stated above, Defendant Walker and Defendant Bloomer's Motions to Suppress evidence obtained directly and indirectly through electronic surveillance (ECF Nos. 62, 73) are DENIED.

A separate Order follows.


Dated:  December 22, 2017


_/s/_____
Richard D. Bennett
United States District Judge